UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| TERRY TRIPP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00045-JMS-DLP |
| | ) | |
| WILLIAM SPANENBURG Corizon, | ) | |
| VIKKI BURDINE Dr., | ) | |
| COURTNEY DELONEY Dr., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY GRANTING UNOPPOSED MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

### I.  Background

Plaintiff Terry Tripp filed this civil rights action on January 30, 2017. At the time of filing, he was incarcerated at the Putnamville Correctional Facility ("Putnamville"). He filed an amended complaint on May 5, 2017. Dkt. 25. The Court screened the amended complaint and allowed the following claims to proceed against three medical defendants:

1) Dr. Vikki Burdine prescribed medications in powder form which is contrary to the manufacturers' instructions, and refused to prescribe Mr. Tripp Welbutrin, in violation of the Eighth Amendment;

2) Dr. Courtney Deloney refused to provide mental health treatment and refused to prescribe or allow other physicians to prescribe necessary mental health medications in violation of the Eighth Amendment and in retaliation for Mr. Tripp filing grievances, in violation of the First Amendment; and

3) Dr. Spanenberg prescribed medications in powder form which is contrary to the manufacturers' instructions and discontinued necessary medications without reason in violation of

the Eighth Amendment, and in retaliation for filing grievances in violation of the First Amendment.

Mr. Tripp seeks compensatory damages and injunctive relief. He is no longer incarcerated at Putnamville, so his claim for injunctive relief is **dismissed as moot.** *See also* dkt. 76 (denying plaintiff's motions for preliminary injunctive relief).

The defendants have moved for summary judgment and Mr. Tripp has not opposed the motion. For the reasons explained in this Entry, the defendants' unopposed motion for summary judgment, dkt. [88], must be **granted.**

## II.     Legal Standards

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

The defendants' motion for summary judgment, brief in support, and Local Rule 56-1 notice were served on Mr. Tripp on or about March 26, 2018. Dkt. nos. 88, 89, 90, 91. As noted, no response has been filed, and the deadline for doing so has long passed.

The consequence of Mr. Tripp's failure to respond is that he has conceded the defendants' version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

### III. Discussion
#### A. Undisputed Facts

The following facts, unopposed by Mr. Tripp and supported by admissible evidence, are accepted as true:

Dr. Vikki Burdine has been a licensed medical doctor in Indiana since 1990 and specializes in General Psychiatry. Dr. Burdine worked as a psychiatrist for Corizon LLC ("Corizon") from April 2010 until March 31, 2017, when Wexford of Indiana ("Wexford") became

the contracted health care provider. As of the date the motion for summary judgment was filed, she was employed by Wexford as a psychiatrist.

When Mr. Tripp was incarcerated in the Indiana Department of Correction ("IDOC") in August 2016, he reported a history of mental health treatment for PTSD, anxiety, bipolar disorder, and depression. He also reported that he was taking Buspirone, Wellbutrin, and Gabapentin.

Wellbutrin is a highly abused and trafficked drug within the IDOC and prisons across the country. Buspirone (Buspar) is commonly prescribed to treat anxiety and is used to augment antidepressants. Buspar generally has a low risk of dependence and does not cause feelings of euphoria. However, it has sedative effects that can cause some patients to abuse it. Gabapentin (Neurontin) is a nerve pain medication and anticonvulsant prescribed to treat seizures. Gabapentin is also abused by inmates because it can elicit euphoria, altered mental states, and disassociation in some users.

Mr. Tripp has a history of substance abuse including alcohol, marijuana, cocaine, and methamphetamines. Individuals with a history of drug addiction and abuse should rarely be prescribed Wellbutrin due to the risk of abuse. Wellbutrin is also contraindicated in patients with a seizure disorder or seizures. Mr. Tripp self-reported a history of seizures.

On August 31, 2016, Dr. Burdine met Mr. Tripp and asked about his mental health history and prior treatments. Mr. Tripp insisted he could only take Wellbutrin. Dr. Burdine performed a mental status exam, which was generally normal. Dr. Burdine gave Mr. Tripp the benefit of the doubt and prescribed Wellbutrin SR 150 mg sustained release, one tablet twice per day.

At all relevant times, Dr. Courtney Deloney was a psychology resident. She was employed by Corizon and Wexford as the Director of Mental Health at Putnamville. Dr. Deloney saw Mr.

Tripp on September 14, 20, and 26, 2016, addressing his mental health needs and assisting him with stabilizing his mood.

For a time, all inmates taking Wellbutrin or other abused drugs had them crushed into powder and floated in water to prevent them from "cheeking" and diverting the medication to other inmates. This was done for the safety and security of the institution only after it was determined that the medications would be equally effective in that form. Corizon pharmacists conducted research which confirmed that crushing Mr. Tripp's 150 mg dose of Wellbutrin was safe and would not harm its efficacy. Dr. Burdine had no reason to believe that there would be any adverse effects to any inmate by having their medications crushed and floated in water.

Dr. William Spanenberg is a physician licensed to practice medicine in the State of Indiana. At the time the motion for summary judgment was filed, he was employed by Wexford as a physician at Putnamville. Prior to April 1, 2017, he was similarly employed as a physician at Putnamville by Corizon.

On December 7, 2016, Dr. Spanenberg made an entry in Mr. Tripp's chart after he was informed that Mr. Tripp was refusing to take his anticonvulsive medication, Keppra. Dr. Spanenberg discontinued the Keppra.

On December 12, 2016, Dr. Spanenberg was notified by security staff that Mr. Tripp was observed trafficking his Neurontin and Wellbutrin. Standard procedures at the facility are to discontinue any medication that is being traded and trafficked behind the walls. As such, based on this information, Dr. Spanenberg notified the Mental Health Unit and Health Services Administrator, and informed security staff to confiscate Mr. Tripp's medication cards and discontinue Neurontin (Gabapentin) and Wellbutrin.

Dr. Spanenberg saw Mr. Tripp seven days later for a follow-up in response to Mr. Tripp's healthcare request and because his medications had been discontinued. Mr. Tripp displayed no symptoms of withdrawal, but he wanted to argue about the discontinuation of the medications.

On December 28, 2016, a doctor who was filling in for the holidays saw Mr. Tripp and re-ordered Neurontin and Wellbutrin, but the doctor's request for Wellbutrin was denied because Mr. Tripp was claiming to have a seizure disorder and seizures are an absolute contraindication for Wellbutrin.

Dr. Burdine saw Mr. Tripp for a tele-med visit on January 4, 2017. Mr. Tripp demanded that Dr. Burdine restart his Wellbutrin. Dr. Burdine offered numerous other antidepressants including Prozac, Paxil, Zoloft, Celexa, Remeron, Effexor, and Cymbalta, but not Wellbutrin because seizures are a contraindication for that medication. Mr. Tripp refused all other medications and demanded Wellbutrin. He raised his voice so loud an officer was called to escort him away. When Mr. Tripp said he didn't know what he might do, Dr. Burdine considered this to be either a threat of violence against others or a suicide threat. Dr. Burdine consulted with Dr. Deloney and agreed that Mr. Tripp should be placed on suicide watch due to his threats. While on suicide watch, he threatened to kill Dr. Burdine.

Mr. Tripp did not appear to have a major depressive disorder or a severe anxiety disorder. He was able to function well in a population setting. Dr. Burdine determined his primary diagnosis was antisocial personality disorder. There was no overt evidence of depression/anxiety or mood instability. Mr. Tripp was very logical and goal directed in a manner designed to get what he wanted. There was no clinical indication for antidepressant medications. Dr. Burdine did not restart Wellbutrin both because it is an abused drug and Mr. Tripp had a history of drug abuse, and because it is not indicated for patients with a seizure disorder.

On January 18, 2017, Mr. Tripp complained of neck and back pain. Dr. Spanenberg prescribed Cymbalta for pain relief. On February 27, 2017, Dr. Spanenberg completed a thorough examination of Mr. Tripp regarding his continued complaints of back and neck pain. At that time, Mr. Tripp reported that the trial of Cymbalta was ineffective. Dr. Spanenberg noted that an appropriate medication for Mr. Tripp would be Neurontin, but given his prior diversion of medication, he was hesitant to prescribe it. Despite the prior report, Dr. Spanenberg decided to reorder Neurontin, but informed Mr. Tripp that any further issues regarding diversion would result in the discontinuation of the medication. Mr. Tripp indicated that he understood and agreed. Mr. Tripp was prescribed Neurontin 600 mg twice a day with his level to be checked by a blood draw in three to four weeks.

Dr. Spanenberg was aware that at one point, Mr. Tripp was receiving his medications in a crushed or floated manner. This was based on policy and the widespread trafficking of certain medications. Dr. Spanenberg never observed any harm that occurred to Mr. Tripp as a result of his medications being crushed.

Dr. Deloney met again with Mr. Tripp on April 7, 2017, and reiterated that further treatment with Wellbutrin was not an option, but that he had been offered several other treatment options but refused. Dr. Deloney discussed with Mr. Tripp other ways of coping with any depression, including exercise, socialization, and positive changes to his daily routine, but Mr. Tripp was unwilling to make any changes.

At that appointment, Mr. Tripp requested to have his mental code changed, stating he had no mental health problems and was no longer interested in being seen by mental health staff. Dr. Deloney agreed to review his request, having noted no symptoms of depression or anxiety.

However, due to his frequent complaints of mood symptoms, she chose to maintain his code so that he could continue to be seen regularly.

Dr. Deloney saw Mr. Tripp on April 27, 2017, and discussed with him several job options that were available to him, including a potential job on the paint crew. He expressed interest in that position. During that same visit, Dr. Deloney explained that she had no vendetta against Mr. Tripp and that he would have continued access to a mental health professional, including having an available option of participating in group therapy. She also recommended that he perform regular exercise and spend time outside to alleviate any depression. At the end of the visit, Mr. Tripp requested to join group therapy sessions, and Dr. Deloney agreed to assist with this. He also requested to be seen more than every three months, and she agreed and ordered that he be placed in group therapy and to be seen at an earlier time. Although he expressed displeasure with not receiving Wellbutrin, discontinuation of the medication did not appear to have significantly impacted Mr. Tripp's behavior or interactions inside the facility.

Despite being signed up for group therapy sessions, Mr. Tripp was inconsistent in his attendance. On June 13, 2017, he did not show up for group therapy. Normally an offender would be dropped from group after two absences, and at that time Mr. Tripp had missed four weeks and only attended two group sessions total. A mental health provider planned to meet with Mr. Tripp to see if he really wanted treatment.

On May 19, 2017, Dr. Deloney received an Offender Informal Complaint in which Mr. Tripp stated that he was dissatisfied with his current behavioral health code placement of C-status, thereby indicating that he believed he was not in an immediate need for mental health treatment. Dr. Deloney did not change his code because it allowed her to see him at least every 90 days for mental health reviews.

B. **Analysis**

At all times relevant to Mr. Tripp's claims, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Mr. Tripp alleges that the defendants violated his Eighth Amendment rights. To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 8374 (1994); *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014).

The defendants first argue that Mr. Tripp did not have an objectively serious medical need because Mr. Tripp did not actually have symptoms of depression or anxiety sufficient to warrant those diagnoses and he stated he had no mental health problems and did not want to be seen. They seek summary judgment on that basis. For purposes of this motion for summary judgment, however, because Mr. Tripp was treated and at one point was placed on suicide watch, the Court will assume that Mr. Tripp had a serious mental health need.

The defendants next argue that they were not deliberately indifferent to Mr. Tripp's mental health needs. The subjective element of a deliberate indifference claim "requires more than negligence and it approaches intentional wrongdoing. The Supreme Court has compared the deliberate indifference standard to that of criminal recklessness." *Burton v. Downey,* 805 F.3d 776, 784 (7th Cir. 2015) (internal citation and quotation omitted). To constitute deliberate indifference, "a medical professional's treatment decision must be such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Petties,* 836 F.3d at 729 (internal quotation omitted).

The claims against each defendant will be discussed in turn.

1. *Dr. Burdine*

*Crushed Medications*

Although Mr. Tripp alleges that the manufacturer of Wellbutrin warned not to put the extended release pill in water or crush it, the record establishes that for reasons of security and safety of the prison, certain medications were crushed for all inmates for a period of time. This made the medication more difficult to divert to other inmates. Moreover, there is no evidence that crushing certain medications harmed Mr. Tripp or made the medications less effective. In fact, the record establishes that pharmacists researched the issue and determined that there would be no loss of efficacy in crushing the medications. More specifically, there is no evidence that Dr. Burdine, or any other defendant, was aware that any harm would come from dispensing medications in this way. Mr. Tripp has not presented any evidence showing deliberate indifference on the part of Dr. Burdine for allowing some of his medications to be dispensed in a powder form.

*Discontinuance of Wellbutrin*

Mr. Tripp alleges that Dr. Burdine refused to prescribe Wellbutrin in violation of the Eighth Amendment. Dr. Burdine initially prescribed Wellbutrin in August 2016, but it was discontinued because Mr. Tripp was caught diverting it. Dr. Burdine chose not to reinitiate the drug because it was often abused and was contraindicated for patients like Mr. Tripp who had a history of seizures. Dr. Burdine offered several other alternative medications, but Mr. Tripp refused them all. It is well-settled that "an inmate is not entitled to demand specific care and is not entitled to the best care possible…." *Arnett,* 658 F.3d at 754. Rather, an inmate "is entitled to reasonable measures to meet a substantial risk of serious harm." *Id.* As noted above, a medical provider's decision to prescribe a particular course of treatment can violate the Constitution only when that treatment decision is such a substantial departure from accepted professional standards as to demonstrate that the provider did not use accepted medical judgment in making the decision. *Petties,* 836 F.3d at 729. Here, there is no evidence that the decision not to prescribe Wellbutrin departed from accepted medical standards. "If a prison doctor chooses an easier and less efficacious treatment without exercising professional judgment, such a decision can also constitute deliberate indifference." *Id.* at 730. Here, however, the treatment choice was not less effective nor was it made for an improper purpose. Rather, the decision was based on a medical contraindication for the prescription and was accompanied by alternative treatment options.

Dr. Burdine is entitled to summary judgment on both claims asserted against her.

2. *Dr. Deloney*

Mr. Tripp alleges that Dr. Deloney refused to treat him and refused to prescribe mental health medications in violation of the Eighth Amendment and in retaliation for his filing of grievances.

No evidence supports the claim of denial of treatment. Rather, Dr. Deloney saw Mr. Tripp three times in September of 2016 and twice in April of 2017. At these appointments, she considered his complaints and provided him with treatment options. On May 19, 2017, Mr. Tripp submitted an informal complaint stating that he longer wanted to be coded as needing mental health treatment. Dr. Deloney chose not to change his code because she wanted to continue to see him at least every 90 days. These facts to not support a claim of deliberate indifference.

"To prevail on a First Amendment retaliation claim, [a plaintiff] must show that (1) he engaged in protected activity; (2) he suffered a deprivation likely to deter future protected activity; and (3) his protected activity was a motivating factor in the defendants' decision to retaliate." *Daugherty v. Page*, No. 17-3224, -- F.3d --, 2018 WL 4938968, at *2 (7th Cir. Oct. 12, 2018). "Under the first element, the filing of a prison grievance is a constitutionally protected activity supporting a First Amendment retaliation claim." *Id.* There is no evidence, however, that Dr. Deloney deprived Mr. Tripp of treatment. In fact, she wanted to continue to treat him even though he wanted to stop seeing mental health providers. Mr. Tripp has not presented evidence sufficient to create a genuine issue of material fact on either the second or third elements of his retaliation claim.

Dr. Deloney is entitled to summary judgment on both claims asserted against her.

### 3. *Dr. Spanenberg*

Mr. Tripp alleges that Dr. Spanenberg violated his Eighth Amendment rights by prescribing medication in powder form and discontinuing his Wellbutrin for no reason. He also alleges that Dr. Spanenberg discontinued the Wellbutrin in retaliation for filing grievances.

*Medications*

As discussed above, certain medications were administered in a powder form to prevent diversion. There is no evidence that the powdered pills were any less effective or caused any harm to Mr. Tripp or any other inmate. Moreover, there were appropriate medical reasons for discontinuing the Wellbutrin. Mr. Tripp was observed diverting it and the Gabapentin. In addition, the Wellbutrin was contraindicated by his history of seizures. Dr. Spanenberg observed no harm to Mr. Tripp as a result of taking powdered medications. There is no evidence of deliberate indifference under these circumstances.

*Retaliation*

Mr. Tripp has failed to present any evidence showing that his grievance was a motivating factor in Dr. Spanenberg's decision to discontinue the Wellbutrin. Rather, the only evidence of record reflects that Dr. Spanenberg discontinued Wellbutrin because Mr. Tripp was observed diverting it to other inmates.

Dr. Spanenberg is entitled to summary judgment on all claims brought against him.

## IV. Conclusion

In sum, Mr. Tripp has failed to present any evidence that would create a genuine issue of material fact as to any of his claims in this action. The record demonstrates that the defendants are entitled to judgment as a matter of law.

For the reasons explained above, the unopposed motion for summary judgment filed by the defendants, dkt. [88], is **granted.** Final judgment consistent with this Entry and with the screening Entry of May 19, 2017, dkt. 29, shall now issue.

**IT IS SO ORDERED.**

Date: 11/13/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

TERRY TRIPP
c/o APRIL CARMEN
173 BALMORAL WAY
APT. 19G
GREENWOOD, IN 46143

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com